UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

I.B.E.W. LOCAL 910 WELFARE, ANNUITY AND PENSION FUNDS, by Mark Capone, as Fund Manager, WATERTOWN ELECTRICAL JOINT APPRENTICESHIP AND TRAINING FUND, by John O'Driscoll and Alan Smith, as Trustees, NATIONAL ELECTRICAL BENEFIT FUND, by Dennies F. Quebe and Salvatore J. Chilia, as Trustees, ST. LAWRENCE VALLEY LABOR MANAGEMENT COOPERATION COMMITTEE, by John O'Driscoll and Alan Smith, as Trustees, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 910, by John O'Driscoll, as Business Manager,

Plaintiffs,

-v- 5:22-CV-550

FELLOWS ELECTRICAL ENTERPRISES and MARTIN R. FELLOWS, Individually,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES: OF COUNSEL:

BLITMAN & KING LLP
Attorneys for Plaintiffs
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204

DANIEL E. KORNFELD, ESQ.

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION & ORDER**

## I. INTRODUCTION

On May 23, 2022, plaintiffs I.B.E.W. Local 910, Welfare, Annuity, and Pension Funds (the "Local No. 910 Funds"), Watertown Electrical Joint Apprenticeship and Training Fund (the "Training Fund"), and National Electrical Benefit Fund (the "NEBF Fund") (collectively "the Funds"), along with the St. Lawrence Valley Labor Management Cooperation Committee ("the Committee") and the International Brotherhood of Electrical Workers Local Union No. 910 ("the Union") (collectively "plaintiffs"), filed this civil action against defendants Fellows Electric Enterprises (the "Company") and Martin R. Fellows ("Fellows"), its owner and authorized agent.

Plaintiffs' four-count complaint seeks monetary and injunctive relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor–Management Relations Act of 1947 ("LMRA") based on the Company's alleged failure to remit certain benefit contributions and

deductions to the Funds and to the Union in accordance with the parties' collective bargaining agreements.

On July 7, 2022, after the time period in which to answer their pleading expired, plaintiffs requested the entry of default against the Company and Fellows (collectively "defendants"). Dkt. No. 7. The Clerk of Court certified the default later that day. Dkt. No. 8.

On July 26, 2022, plaintiffs moved under Federal Rule of Civil Procedure ("Rule") 55(b) for the entry of a default judgment against the Company in the amount of $58,857.23 and against Fellows individually in the amount of $51,199.19. Dkt. No. 10. After the time period in which to brief the motion had expired, plaintiffs filed a status report in which they informed the Court that "the motion is now ripe for action." Dkt. No. 12.

However, on August 26, 2022, plaintiffs filed a letter motion in which they informed the Court they had received an e-mail message regarding the pending action from Fellows's wife, a non-party. Dkt. No. 13. Plaintiffs' letter motion requested the "Court delay further action on the motion for at least thirty (30) days to give [d]efendants an opportunity to find legal counsel." *Id*. The letter also indicated plaintiffs would attempt to contact Ms. Fellows "to discuss a potential resolution to these claims without further

judicial involvement." *Id.* The Court so-ordered plaintiffs' letter motion on August 29, 2022.[1] Dkt. No. 14.

On September 29, 2022, plaintiffs filed a second status report in which they informed the Court that their efforts to settle the claims with Fellows and his wife had failed. Dkt. No. 17. Plaintiffs also pointed out defendants had still not entered an appearance or attempted to oppose the motion for default judgment. *Id.* Because the thirty-day period of delay previously granted by the Court had elapsed, plaintiffs renewed their request for a ruling on the still-pending motion for default judgment. *Id.*

That motion has been briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The Local No. 910 Funds and the Training Fund are multi-employer benefit plans administered from Watertown, New York. Compl. ¶¶ 6–7. The NEBF Fund is administered from Rockville, Maryland. *Id.* ¶ 9. The Union and the Committee are operated from Watertown. *Id.* ¶¶ 10–11. And the Company, which is owned by Fellows, operates out of its headquarters in Norfolk, New York. *Id.* ¶¶ 14–15.

[1] Thereafter, Fellows's wife filed with the Court a handwritten letter. Dkt. No. 15. That letter was stricken by the assigned Magistrate Judge as a non-party filing. Dkt. No. 16.

The Union and the Company are parties to certain bargaining agreements (the "Agreements") that, *inter alia*, require the Company to remit fringe benefit contributions and deductions to the Funds and to the Union based on hours worked by the Company's employees. Compl. ¶ 21–27. According to the complaint, the Company violated the Agreements because it failed to remit at least $45,535.52 in fringe benefit contributions and deductions for hours worked by the Company's employees between November 1, 2021 and March 31, 2022.[2] *Id.* ¶¶ 29–31.

## III. LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011); *see also* FED. R. CIV. P. 55(a)–(b).

"The first step is to obtain an entry of default." *Priestley*, 647 F.3d at 505. "When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention." *Id.* "In such circumstances Rule 55(a) empowers the clerk of court to enter a default." *Id.*

"The next step requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505. "Rule 55(b)(1) allows the clerk to

---

[2] The complaint characterizes this amount as a floor, since the Company has failed to remit complete reports. Compl. ¶ 29.

enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear." *Id.* "In all other cases Rule 55(b)(2) governs." *Id.* "It requires a party seeking a judgment by default to apply to the court for the entry of a default judgment." *Id.*

## IV. DISCUSSION

Plaintiffs' motion for default judgment seeks an award of $58,857.23 against the Company and $51,199.19 against Fellows. Pls.' Mem., Dkt. No. 10-15 at 5.[3] As plaintiffs explain, they have received from the Clerk of Court a certification that defendants are in default, Dkt. No. 8, and despite having served the non-appearing defendants with copies of their request for default judgment, Dkt. No. 11, and having sought an extra thirty-day period in which to permit defendants to appear in this action or to try to resolve the matter without further judicial intervention, Dkt. No. 17, neither the Company nor Fellows has entered an appearance or otherwise defended this action.

Where, as here, a defendant has failed to appear in the action or oppose a default judgment, they are deemed to have admitted the well-pleaded factual allegations in the complaint. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). Importantly, however, "[e]ven where a defendant has admitted all well-pleaded facts in the complaint by virtue of

[3] Pagination corresponds to CM/ECF.

default, a District Court 'need not agree that the alleged facts constitute a valid cause of action,' and may decline to enter a default judgment on that ground." *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 505 F. Supp. 3d 137, 149 (N.D.N.Y. 2020) (Sannes, J.) (quoting *Mickalis Pawn Shop, LLC*, 645 F.3d at 137); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (suggesting district court is still required to determine whether the allegations establish liability as a matter of law).

Upon review, plaintiffs' motion must be granted. The Company's default amounts to an admission that the Company is bound by the Agreements, which obligated it to remit contributions to the Funds and deductions to the Union. Compl. ¶¶ 23–24. Because the Company failed to do so, it is liable for the unpaid contributions and deductions as well as interest, liquidated damages, attorney's fees, and costs. *Id.* ¶¶ 29–31.

Those admissions amount to a valid claim for relief under ERISA, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Where, as here, the employer has failed to make contributions, the court "shall award" the plan with: (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of (i) the accrued interest or (ii) liquidated damages; (D) reasonable attorney's fees and costs; and (E) any other legal or equitable relief deemed appropriate." § 1132(g)(2).

These admitted facts also establish a valid claim under the LMRA, which "provides a federal cause of action for suits for violation of contracts between an employer and a labor organization." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (cleaned up). "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a CBA." *Upstate N.Y. Eng'rs Health Fund ex rel. Spaulding v. Pumpcrete Corp.*, 2022 WL 595701, at *3 (N.D.N.Y. Feb. 28, 2022) (Sannes, J.) (cleaned up).

The same is true as a result of Fellows's default in this action. Generally speaking, an individual "is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." *Sasso v. Cervoni*, 985 F.2d 49, 51 (2d Cir. 1993). However, "Section 409 of ERISA, 29 U.S.C. § 1109, provides an independent basis" for liability if the defendant is a "fiduciary." *Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015).

"Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). The definition is "functional," and focuses on such things as whether the individual defendant "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii).

As relevant here, the admitted facts establish that Fellows acted as a fiduciary with respect to the Company's obligations to the Funds and the Union. *See, e.g.*, Compl. ¶ 47. The admissions further establish he dominated and controlled the affairs of the Company, withheld contributions, and purposefully diverted them to his own benefit. *Id.* ¶¶ 38–44.

The remaining question is whether damages can be ascertained without a hearing. "[A] defendant's default does not constitute admission of the plaintiff's allegations relating to the amount of damages." *Int'l Assoc. of Sheet Metal, Air, Rail & Transp. Workers, Local Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 184 (W.D.N.Y. 2020) (cleaned up).

"Rule 55(b)(2) provides that when granting a default judgment, if it is necessary to take account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct

such hearings or order such references as it deems necessary and proper." *Credit Lyonnaise Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (cleaned up).

However, "[t]he Second Circuit has held that as long as the district court 'ensured there was a basis for the damages specific in the default judgment,' such as by relying on detailed affidavits and documentary evidence, it is not necessary for the court to hold a hearing." *Finkel v. Firequench, Inc.*, 2020 WL 1323017, at *1 (E.D.N.Y. Mar. 20, 2020) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Upon review, there is no need for a hearing because plaintiffs' submissions provide an ample basis for the calculation of damages. *See* Capone Aff., Dkt. No. 10-1 & supporting exhibits. Among other things, plaintiffs' submissions establish that the Company owes the Funds and the Union: (1) $45,535.52 in fringe benefit contributions and deductions for work in covered employment during the period of November 1, 2021 through March 31, 2022; (2) $3,678.71 in interest related to the delinquency as of July 21, 2022; and (3) $4,553.55 in liquidated damages. Capone Aff. ¶ 20. These submissions further establish that Fellows owes the Funds $42,620.19 in fringe benefit contributions plus $3,489.55 in interest. *Id.* ¶ 21.

As a final matter, attorney's fees and costs are appropriately awarded under ERISA and the LMRA. *See* Pls.' Mem. at 9–11; *see also Bricklayers*

*Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, 2021 WL 3861762, at *2 (E.D.N.Y. Aug. 30, 2021) (collecting cases on ERISA and the LMRA).

"In calculating attorney's fees, the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee." *Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014) (cleaned up).

Under the lodestar approach, the "reasonable hourly rate" is determined by reference to "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 184 (2d Cir. 2008). As the Second Circuit has explained, "the reasonable, paying client" is one "who wishes to pay the least amount necessary to litigate the case effectively." *Id.*

To make that determination, courts must consider a number of factors, including but not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation,

> etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

Plaintiffs seek $4,417.60 in attorney's fees and $671.85 in costs and disbursements. Kornfeld Aff., Dkt. No. 10-13 ¶ 8; *see also* Ex. A to Kornfeld Aff., Dkt. No. 10-14. To reach the first number, plaintiffs have requested an rate of $352 per hour for Daniel Kornfeld, an experienced ERISA attorney with twenty-five years of experience. Kornfeld Aff. ¶ 7.

In determining a reasonable hourly rate, "[t]he Second Circuit has instructed district courts to consider 'all case-specific variables' including [the] factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 251 (E.D.N.Y. 2020). These twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Torcivia*, 437 F. Supp. 3d at 251 n.3 (citations omitted). Importantly, however, the trial court "need not robotically recite and make separate findings as to all twelve of the Johnson factors." *Id.* (cleaned up).

Upon review, the requested hourly rate is reasonable. Under the "forum rule," the reviewing court generally applies the prevailing hourly rate in the district in which it sits to calculate a presumptively reasonable fee. *See, e.g.*, *Pumpcrete Corp.*, 2022 WL 595701, at *8 (finding rates of $323 and $328 for counsel to be reasonable and collecting cases).

Plaintiffs' motion further seeks an award for 12.55 hours of work. *See* Kornfeld Aff. ¶ 8. That number, which is supported by appropriate time entries, is also reasonable. *See Finkel*, 970 F. Supp. 2d 108, 129 (E.D.N.Y. 2013) (explaining that court reviewing fee application "should exclude excessive, redundant or otherwise unnecessary hours").

Finally, plaintiffs' motion seeks $671.85 in costs. This bottom-line number consists of fees for copying ($93.85), filing ($402), postage ($10.38), courier service ($17.12), and service of process ($148.50). Based on a review of the record and the submissions, these costs are reasonable. *See Finkel*, 970 F. Supp. 2d at 130 (recommending a similar award of costs in ERISA action).

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiffs' motion for a default judgment is GRANTED;

2. Plaintiffs are awarded $45,535.52 in unpaid contributions plus $3,678.71 in interest and $4,553.55 in liquidated damages against defendant Fellows Electric Enterprises, together with post-judgment interest at the rate provided for by 28 U.S.C. § 1961(a);

3. Plaintiffs are awarded $4,417.60 in attorney's fees and $671.85 in costs against defendant Fellows Electric Enterprises, together with post-judgment interest at the rate provided for by 28 U.S.C. § 1961(a); and

4. Plaintiffs are awarded $42,620.19 in unpaid contributions plus $3,489.55 in interest against defendant Martin R. Fellows, together with post-judgment interest at the rate provided for by 28 U.S.C. § 1961(a).[4]

The Clerk of the Court is directed to enter judgment accordingly, terminate the pending motion, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: October 13, 2022
Utica, New York.

---

[4] While a fiduciary is obligated to "make good to [the] plan any losses to the plan resulting from [his] breach, and . . . [provide] such other equitable or remedial relief as the court may deem appropriate," 29 U.S.C. § 1109(a), the Second Circuit has held that liquidated damages do not qualify on any of those grounds, *Moulton Masonry & Constr., LLC*, 779 F.3d at 189. Likewise, the Circuit has cautioned that an award of attorney's fees against an individual defendant is inappropriate absent a "specific analysis" as to why they are justified. *Id.* Because plaintiffs have not offered one, the award against Fellows is limited to (1) unpaid contributions and (2) appropriate interest.